# UNITED STATES DISTRICT COURT
# NORTHER DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| **LINCOLN NATIONAL LIFE,** | ) |
| | ) |
|     **Plaintiff / Counterclaim Defendant,** | ) |
| | ) |
|     v. | )     **CAUSE NO. 1:07-CV-265** |
| | ) |
| **JACKSON NATIONAL LIFE INSURANCE** | ) |
| **COMPANY and JACKSON NATIONAL LIFE** | ) |
| **INSURANCE COMPANY OF NEW YORK** | ) |
| | ) |
|     **Defendants / Counterclaim Plaintiffs.** | ) |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Amend Answer and Counterclaim. (Docket # 118.) Defendants ask the Court for leave—after the deadline to amend has expired—to add an allegation that the Plaintiff committed inequitable conduct while prosecuting the patents-in-suit by withholding a material prior art reference from the Patent and Trademark Office ("PTO"). The Plaintiff opposes the motion on multiple grounds. For the reasons provided, the Defendants' motion is GRANTED.

### I. FACTUAL AND PROCEDURAL HISTORY

On October 30, 2007, Plaintiff Lincoln National Life ("Lincoln") filed suit against the Jackson National Life Insurance Company and the Jackson National Life Insurance Company of New York (collectively, "Jackson"), alleging infringement of US Patent No. 6,611,815 (the "'815 Patent"), entitled "Method and System for Providing Account Values in an Annuity with Life Contingencies," and US Patent No. 7,089,201 (the "'201 Patent"), entitled "Method and

Apparatus for Providing Retirement Income Benefits." (Compl. ¶¶ 8-18.) Lincoln later amended its complaint to add an allegation that Jackson was also infringing US Patent No. 7,376,608 (the "'608 Patent"), entitled "Method and System for Providing Retirement Income Benefits." (Docket # 50.) These patents generally relate to a computerized method of calculating annuities.

Jackson denies any infringement and responded in its Answer with the defense and counterclaim that Lincoln committed inequitable conduct before the PTO. On January 30, 2008, Lincoln filed a motion to dismiss the inequitable conduct allegations (Docket # 19), which was granted, fourteen months later, and without prejudice, by Judge Joseph Van Bokkelen on March 27, 2009. (Docket # 100.)

On December 17, 2009, Jackson filed a Motion to Amend, seeking to add an alternative allegation of inequitable conduct against Lincoln .(Docket # 118.) Jackson now claims that the '201 and '608 Patents are invalid because Lincoln committed inequitable conduct during their prosecution by withholding a material prior art reference from the PTO, the "Lincoln American Legacy III Variable Annuity Account H Product" (hereinafter, the "Lincoln Reference").

Lincoln attacks the proposed amendment on three grounds. It first claims that Jackson has not shown good cause under Federal Rule of Civil Procedure 16(b) for the amendment, which comes approximately fourteen months after the October 1, 2008, deadline to amend. (Pl.'s Resp. 13.) (*See* Docket # 31.) Lincoln next argues that since the inequitable conduct claim could not survive summary judgement, the amendment should be denied as futile under Rule 15(a). (Pl.'s Resp. 18.) Finally, Lincoln argues that the Defendants' proposed amendment does not meet the heightened requirements for pleading inequitable conduct required by Rule 9(b) and the Federal Circuit's decision in *Exergen Corp. v. Walmart Stores, Inc*., 575 F.3d 1312 (Fed. Cir.

2009). (Pl.'s Resp. 14.)

Jackson counters that it has shown good cause to amend after the deadline, arguing that it only recently discovered the disputed reference and needed to depose the patent inventors prior to alleging inequitable conduct. (Defs.' Reply 4.) Jackson argues that its inequitable conduct claim is not futile because the correct standard to gauge futility is whether the amendment could survive a motion to dismiss. (Defs.' Reply 14.) Nevertheless, Jackson claims that even if Lincoln's standard is adopted, its inequitable conduct claim could also survive a motion for summary judgement and is therefore not futile. Jackson also contends that its amendment meets the heightened pleading requirements under Rule 9(b) and *Exergen* and, following a procedure established by this Court in similar litigation, *see Lincoln Nat. Life v. Transamerica Financial Life Ins. Co.*, No. 1:08-cv-135, 2009 WL 4547131, at *1 (N.D. Ind. Nov. 25, 2009), has submitted charts detailing the specific "who, what, when, where, and how." (Defs.' Reply 10.) (*See* Docket # 118, Ex. B.)

On March 26, 2009, Lincoln alerted the Court to a recent decision of the Court of Appeals for the Federal Circuit, *Pressure Prods. Med. Supplies, Inc. v. Greatbatch, Ltd.*, --- F.3d ---, No. 2008-1602, 2010 WL 1051154 (Fed. Cir. Mar. 24, 2010), that it believed was instructive to the Motion to Amend. Accordingly, the Court directed the parties to each file a supplemental brief addressing this new authority. (Docket # 132.) With the record now complete, the Court will address the Motion to Amend.

## II. STANDARD OF REVIEW

Jackson must overcome three hurdles to amend its Answer and add an allegation of inequitable conduct. Jackson must first satisfy the requirements of Federal Rule of Civil

Procedure 16(b). Once the court has entered a pretrial scheduling order pursuant to Rule 16 and created a time table for amending pleadings, that rule's standards control. *See Kortum v. Raffles Holdings, Ltd.*, No. 01 C 9236, 2002 WL 31455994, at *3 (N.D. Ill. Oct. 30, 2002) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992)); *Tschantz v. McCann*, 160 F.R.D. 568, 570-71 (N.D. Ind. 1995). Rule 16(b)(3)(A) requires that the scheduling order "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." A party seeking to amend a pleading after the date specified in a scheduling order must show "good cause" for the amendment under Rule 16(b). *Tschantz*, 160 F.R.D. at 571. The good cause standard focuses on the diligence of the party seeking the amendment. *Id*. In other words, to demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met. *Id*.

Federal Rule of Civil Procedure 15(a) provides the next challenge. Under Rule 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served; otherwise, it may amend only by leave of the court or by written consent of the adverse party. Leave to amend is freely given when justice so requires. *Id*. However, this right is not absolute, *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002), and can be denied for undue delay, bad faith, dilatory motive, prejudice, or futility. *Ind. Funeral Dir. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003).

Finally, because Jackson seeks to add an allegation that Lincoln committed inequitable conduct in prosecuting the patents, it must clear one last obstacle. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.

4

Civ. P. 9(b). The Seventh Circuit Court of Appeals has held that the "circumstances" in Rule 9(b) "must be pleaded in detail"—"[t]his means the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999).

The Federal Circuit adopted the Seventh Circuit's reasoning in *Exergen Corp. v. Walmart Stores, Inc.*, 575 F.3d 1312, 1325-28 (Fed. Cir. 2009), and held that inequitable conduct, although a broader concept than fraud, must also be plead with particularity.[1] "[F]ollowing the lead of the Seventh Circuit in fraud cases, we hold that in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. Furthermore, an inequitable conduct pleading must also "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

### III. JACKSON'S MOTION TO AMEND IS GRANTED

A. *Jackson Has Shown Good Cause Under Rule 16(b)*

Jackson clears the first hurdle presented by Rule 16(b). During the February 20, 2008, Rule 16 Preliminary Pretrial Conference, the parties agreed to set October 1, 2008, as the last

---

[1] The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO. *Exergen,* 575 F.3d at n. 17 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008)); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 1181 (Fed. Cir. 1995); 37 C.F.R. § 1.56 (2008)).

5

day to amend the pleadings. (Docket # 31.) The Motion to Amend, however, was made on December 17, 2009—more than fourteen months after the expiration of the deadline to amend.

This delay, however, is not entirely due to Jackson's lack of diligence. Jackson's original Answer alleged that Lincoln committed inequitable conduct before the PTO.[2] (*See* Docket # 16, 58.) On January 30, 2008, Lincoln filed a motion to dismiss the inequitable conduct defense, arguing that it was not plead with particularity under Federal Rule of Civil Procedure 9(b). That motion continued to pend until well after the October 1, 2008, deadline. Ultimately, Lincoln's motion was granted without prejudice on March 27, 2009, six months after the October 1, 2008, deadline to amend had expired. Approximately nine more months expired before Jackson filed the present motion to amend on December 17, 2009.

Jackson's diligence is therefore gauged by the time that passed between the March 27, 2009, dismissal of the original inequitable conduct allegation and the December 17, 2009, motion to amend. Jackson claims that this delay was not due to a lack of diligence, but rather from its need to independently discover the Lincoln Reference and then conduct depositions of the named inventors to meet the *Exergen* pleading requirements. Lincoln responds that the Lincoln Reference has been publicly available since 1997 and claims that Jackson was simply not diligent in seeking to amend its answer.

Jackson has shown good cause to amend after the deadline. Although a delay of nine months (and certainly fourteen months) is indeed lengthy, it does not automatically preclude a finding of good cause. Rather, courts have recognized that, in light of the heightened standard

---

[2] That allegation of inequitable conduct pertained only to the '201 Patent and was based on a different prior art reference.

for pleading inequitable conduct, good cause may exist for motions filed many months after the deadline where the defendant was nevertheless diligent in preparing its claims. *See Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366 (D. Del. 2009) (finding good cause where motion seven months late); *Connetics Corp. v. Pentech Pharm., Inc.*, No. 2009 WL 1089552, at *2 (N.D. Ill. Apr. 16, 2009) (finding good cause where motion eight months late); *Douglas Press, Inc. v. Tabco Inc.*, No. 00 C 7338, 2004 WL 1144054, at *1 (N.D.Ill. May 17, 2004) ("Allegations of inequitable conduct are serious and we cannot fault [the defendant] for waiting for further evidence before filing such an affirmative defense, especially keeping in mind Rule 11.")

In the present case, once the original allegation of inequitable conduct was dismissed on March 27, 2009, Jackson diligently investigated an alternative theory of inequitable conduct involving the Lincoln Reference. The parties engaged in settlement negotiations throughout the summer of 2009 (*see* Docket # 103, 106, 111) and Jackson then deposed three of the four named inventors of the Lincoln Reference on August 4, 2009, September 24, 2009, and November 19, 2009. (Defs.' Reply 8-9.) The Motion to Amend promptly followed on December 17, 2009. (Docket # 118.) Given the procedural history of this case, the seriousness of an allegation of inequitable conduct, and the heightened pleading requirements of Rule 9(b) and *Exergen*, Jackson acted diligently in connection with its Motion to Amend. Accordingly, the Court finds that Jackson has shown good cause under Rule 16(b).[3]

---

[3] In *Pressure Prods. Med. Supplies, Inc. v. Greatbatch, Ltd.*, Lincoln's supplemental authority, the Federal Circuit upheld the denial of a motion to amend where the district court largely based its reasoning on the existence of prejudice under Rule 15(a). 2010 WL 1051154, at *8-9. Here, by contrast, Lincoln does not suggest that it will be prejudiced by the amendment.

7

B. *Jackson's Motion to Amend is not Futile Under Rule 15(a)*

After demonstrating that good cause exists, Jackson must next confront the requirements of Rule 15(a). Under Rule 15(a), a motion to amend may be denied for undue delay, bad faith, dilatory motive, prejudice, or futility. *Ind. Funeral Dir. Ins. Trust*, 347 F.3d at 655. Lincoln claims that Jackson's motion must be denied as futile because it could not survive a motion for summary judgement. (Pl.'s Resp. 18.) Jackson, however, argues that its motion is not futile because futility must be gauged exclusively by whether the proposed amendment would survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim. (Defs.' Reply 14-15 ).

Accordingly, the first step in analyzing Jackson's motion is to clarify the proper standard by which to determine futility under Rule 15(a). "Futility generally is measured by whether the amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Range v. Brubaker*, No. 3:07-cv-480, 2009 WL 3257627, at *3 (N.D. Ind. Sep. 30, 2009). *See also Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004); *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004); *Garcia v. City of Chi*cago, 24 F.3d 966, 970 (7th Cir. 1994).

Futility should be judged on whether the amendment could survive summary judgement only when a corresponding motion for summary judgement is pending. *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 96 (N.D. Ill. 2008) ("Acceptance of [the] argument that futility is defined solely with reference to the summary judgment standard would effectively transform all Rule 15(a) motions into Rule 56 motions. But that would be a nonsensical—and thus impermissible—reading of Rule 15(a)."). *See also Connetics Corp.*, No. 2009 WL 1089552, at *2 (applying motion to dismiss standard because no summary judgement motions pending);

8

*Miller v. Account Mgmt. Serv.*, No. 1:07-cv-231, 2008 WL 2338300, at *2 (N.D. Ind. June 3, 2008) (applying motion to dismiss standard and noting "[i]f a summary judgment motion is pending, futility may be shown with reference to the entire summary judgment record.").

With no corresponding summary judgement motion pending, futility is properly gauged under the motion to dismiss standard. Jackson's counterclaim should not be halted, therefore, unless it appears that Jackson can prove no set of facts which would support its claim for relief. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). In determining the propriety of dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all well-pled factual allegations in the [counterclaim] and draw all reasonable inferences therefrom in favor of [Jackson]." *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The purpose of the motion to dismiss is to test the legal sufficiency of the counterclaim and not to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989), *abrogated on other grounds by*, Bd. of County Comm'rs, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668 (1996). "If it appears beyond doubt that [Jackson] can prove any set of facts consistent with the allegations in the [counterclaim] which would entitle [it] to relief, dismissal is inappropriate." *Perkins*, 939 F.2d at 466.

As will be shown in the next section, Jackson's proposed inequitable conduct claim meets the heightened *Exergen* pleading requirements. The allegations of inequitable conduct are therefore legally sufficient and, although they may very well not survive a future motion for summary judgment, they would survive a Rule 12(b)(6) motion to dismiss. Accordingly, the allegations of inequitable conduct are not futile and leave to amend cannot be denied under Rule 15. *See Braun Corp. v. Vantage Mobility Intern., LLC*, No. 2:06-cv-50, 2010 WL 403749, at *4-

9

10 (N.D. Ind. Jan. 27, 2010) (finding Defendant stated a claim and that motion to amend was not futile after *Exergen* standard met).

C. *Jackson's Pleading Meets the Rule 9(b) and Exergen Standard*.

Jackson must surmount one final obstacle to amend its answer and allege inequitable conduct—the heightened requirements for pleading fraud under Rule 9(b) and *Exergen*. Specifically, Jackson must allege the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. Furthermore, an inequitable conduct pleading must "include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328-29.

Following a procedure initiated by this Court in related litigation, *see Lincoln Nat. Life*, 2009 WL 4547131, Jackson has created "*Exergen* charts" that repackage the allegations made in the Amended Answer to specifically show how the claim of inequitable conduct meets the heightened pleading standard.[4] (Docket # 118, Ex. B.) Jackson has even gone so far as to incorporate these charts into its Amended Answer. In its Response, Lincoln does not argue that the proposed Amended Answer fails to satisfy the "who, what, when, and where" requirements.[5] (Pl.'s Resp. 15.) Rather, Lincoln focuses its attacks on the "how" requirement, while also

---

[4] The Court will disregard any allegations or facts found in the Exergen Charts that are not originally made in the pleading. The charts in no way supplement the pleadings, but simply reformat the information for ease of understanding.

[5] Upon its own review, the Court finds that Jackson has sufficiently pled the "who, what, when, and where" factors.

alleging that Jackson has not pled sufficient facts to give rise to the required inference of intent.

Before turning to the substance of the pleading, the Court must therefore first address exactly what is required by the *Exergen* holding. In *Exergen*, the Court of Appeals for the Federal Circuit ultimately held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." 575 F.3d at 1327. When later analyzing the proposed amendment, however, the Federal Circuit arguably added a "why" requirement:

> [T]he pleading states generally that the withheld references are 'material' and 'not cumulative to the information already of record,' . . . but does not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record. Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims.

*Exergen*, 575 F.3d at 1329-30. Litigants defending against a motion to amend, including Lincoln in the present case, have seized on this apparent addition and attempted to write a distinct "why" requirement into the Federal Circuit's holding. *See Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08-cv-918, 2010 WL 1427592, at *7-8 (M.D. N.C. Apr. 8, 2010) (identifying the discrepancy and addressing both "how" and "why" factors).

However, a plain reading of the *Exergen* opinion strongly suggests there is no independent "why" requirement. The Federal Circuit expressly adopted the Seventh Circuit's test for pleading fraud, *Exergen*, 575 F.3d at 1327, which only includes who, what, when, where, and how requirements. *See DiLeo,* 901 F.2d at 627. Furthermore, when the Federal Circuit

11

declared its holding, it made no mention of a "why" requirement. *Exergen*, 575 F.3d at 1327 ("[F]ollowing the lead of the Seventh Circuit in fraud cases, we hold that in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO.").

Rather, the "how" and "why" factors described by the Federal Circuit both refer to the broader requirement of materiality. Specifically, the party seeking leave to amend must show *how* the patent examiner would have used the withheld reference in evaluating the patent application; that is to say, *why* the withheld information is material and not cumulative to the information already disclosed.

Even if there is a distinct "why" inquiry, Jackson's Amended Answer more than meets both requirements. In *Exergen*, the Federal Circuit found the amendment deficient because it only "state[d] generally that the withheld references are 'material' and 'not cumulative to the information already of record,'. . . but does not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record." *Exergen*, 575 F.3d at 1329.

In the present case, however, Jackson's Amended Answer devotes *eleven pages* to demonstrating materiality by producing charts that meticulously compare the claims of the '201 and '608 Patents against the Lincoln Reference. For example, Jackson compares Claim 35 of the '201 Patent with Page 55 of the Lincoln Reference:

| Claims of U.S. Patent No. 7, 089, 201 | Lincoln VA Account H (1997) |
| --- | --- |
| 35. A computerized method for administering a variable annuity plan having a guaranteed minimum payment feature associated with a systematic withdrawal program, and for periodically determining an amount of a scheduled payment to be made to the owner under the plan, comprising the steps of: | The Lincoln VA Account H is a variable annuity product in which the account value may vary with time and that allows withdrawals (a systematic withdrawal program) from the unannuitized account and has a guaranteed minimum payment feature in the form of a guaranteed minimum death benefit (GMDB). The Lincoln VA Account H guarantees that a minimum death benefit amount will be paid at a subsequent date, either by withdrawals or as a death benefit (upon the death of the owner). The owner may elect to make partial withdrawals or set withdrawals through an "automatic withdrawal service." (Prospectus, p. 55). |

(Am. Ans. 14.) Jackson alleges that the Lincoln Reference discloses a variable annuity product with a systematic withdrawal and a guaranteed minimum payment, features that directly appear in Claim 35 of the '201 Patent. Jackson was similarly thorough and detailed when dissecting the '608 Patent. Jackson has clearly pled that the information in the Lincoln Reference was material to the '201 and '608 Patents.[6]

Jackson also directly addressed how the Patent Examiner would have used the Lincoln Reference in evaluating the '201 and '608 Patents. For example, Jackson claims that Lincoln distinguished another piece of prior art, U.S. Patent No. 5,933,815 (the "Golden Patent"), by claiming that it does not have a "guaranteed minimum payment" feature and does not disclose a

---

[6] In its response, Lincoln has provided a detailed analysis of the various financial products at issue in an effort to disprove Jackson's allegation that the Lincoln Reference is in fact material to the '201 and '608 Patents. This effort ignores the requirement that, at the pleading stage, the Court must "treat the pleaded facts as true" and "draw all reasonable inferences in favor of [Jackson]." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) (quoting *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 506-07 (7th Cir. 2007)).

computerized method for administering a variable annuity. Similarly, Jackson alleges that "[Lincoln] further distinguished Golden as not relating to variable annuities and not adjusting the payments based on withdrawals. At page 16 of the First Response, the inventors distinguished Golden as not making scheduled payments even if the account value is exhausted." (Am. Ans. 24-25.) Jackson then directly addresses how the Patent Examiner would have used the Lincoln Reference in assessing patentability. "The disclosure of the Lincoln Variable Account H with regard to its computerized administration of a variable annuity account having an account value, systematic withdrawal program and a guarantee, would have provided the PTO Examiner with a reference having the features of the claims allegedly missing from the Golden patent." (Am. Ans. 25.)

As Jackson points out, Lincoln's objection apparently hinges on the fact that the Amended Answer only twice uses the word "non-cumulative" in its Answer. However, "the heightened pleading standard of Rule 9(b) does not require adherence to blind formalism." *Prince-Servance v. BankUnited, FSB*, No. 07 c 1259, 2007 WL 3254432, at *6 (N.D. Ill. Nov. 1, 2007) (citing *Byczek v. Boelter Cos.*, 264 F.Supp.2d 720, 722 (N.D.Ill.2003)). Courts have specifically rejected the notion that the *Exergen* standard hinges on a formulaic recital of the word "non-cumulative." *Bone Care Intern., LLC v. Pentech Pharmaceuticals, Inc*., No. 08-cv-1083, 2010 WL 1655455, at *6 (N.D. Ill. Apr. 23, 2010) ("This Court does not read *Exergen* as imposing a strict requirement that pleadings include the word 'non-cumulative' in order to plead inequitable conduct with the requisite particularity.") Rather, "[w]ith respect to materiality and non-cumulativeness, the pleading must put Plaintiffs on notice as to what information Defendants contend should have been before the examiner but wasn't and how that information

14

would have changed the examiner's decision . . ..". *Id*. Jackson's Amended Answer clearly puts Lincoln on notice regarding what information should have been before the examiner and how it would have been used and therefore meets the heightened pleading requirements.

Finally, Jackson's pleading also gives rise to a reasonable inference that an individual knew of the Lincoln Reference and withheld this information with a specific intent to deceive the PTO. In *Exergen*, the proposed amendment merely alleged that "'Exergen was aware' of the '808 and '998 patents in general, and that Exergen had become aware of them during prosecution of Exergen's own prior applications." 575 F.3d 1330. The Federal Circuit found that this allegation was deficient because it provided "no factual basis to infer that any specific individual, who owed a duty of disclosure . . . knew of the specific information in the [withheld references] that is alleged to be material to the claims of the [patent in suit]." *Id*.

In this case, by contrast, Jackson has alleged that the named inventors knew of their duty to disclose relevant information (Am. Ans. ¶ 40, 41) and knew of the features of the withheld Lincoln Reference that Jackson believes are relevant to the patentability of the '201 and '608 Patents. (Am. Ans. ¶ 43-57.) Jackson then argues that the Lincoln Reference was never cited as prior art during the prosecution of the '201 and '608 Patents (Am. Ans. ¶ 58) and that it was withheld with intent to deceive the PTO. Specifically, Jackson alleges that Lincoln submitted ten documents as part of a June 13, 2007, disclosure to the PTO that the inventors believed were not relevant prior art. (Am. Ans. ¶ 64.) Jackson claims that Lincoln's failure to disclose the arguably relevant Lincoln Reference when it *did* disclose documents that it believed were *not* relevant prior art, creates a reasonable inference that the inventors acted to deceive the PTO. (Am. Ans. ¶ 67.)

15

These allegations are sufficient to create a reasonable inference that the Lincoln Reference was deliberately withheld from the PTO. As this Court has previously stated, and other Courts have similarly noted, "[t]he heightened pleading requirements of Rule 9(b) do not require that [Jackson] definitively prove the merits of its claim. What is determinative here is that [Lincoln] was given fair notice of the basis for [Jackson's] inequitable conduct defense." *Lincoln Nat. Life*, 2009 WL 4547131, at *2 (quoting *WesternGeco v. Ion Geophysical Corp.*, No. 09-cv-1827, 2009 WL 3497123, at *7 (S.D. Tex. Oct. 28, 2009)). *See also Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-cv-5023, 2010 WL 1257803, at *18 (E.D. N.Y. Mar. 26, 2010) ("In sum, '[t]he issue before the Court is not whether [defendant] will ultimately prevail, but whether it is entitled to offer evidence' to support its allegations of inequitable conduct.") (quoting *Pall Corp. v. Cuno Inc.*, --- F.Supp.2d ----, No. CV 97-7599, 2010 WL 301954, at *4 (E.D. N.Y. Jan. 20, 2010)). After two rounds of exhaustive briefing on this motion, Lincoln is certainly on notice of the elements of Jackson's inequitable conduct claim. Accordingly, because Jackson has met the heightened pleading requirements of Rule 9(b) and *Exergen*, it must be granted leave to amend its answer and add an allegation of inequitable conduct.

## IV. CONCLUSION

Jackson has shown good cause under Federal Rule of Civil Procedure 16(b) to amend its Answer after the deadline. Similarly, because the inequitable conduct claim would survive a motion to dismiss, leave to amend cannot be denied as futile under Rule 15(a). Finally, Jackson's proposed Amended Answer and Counterclaim meets the heightened pleading requirements for inequitable conduct required by Rule 9(b) and *Exergen*. Accordingly, the Defendants' Motion to Amend (Docket # 118) is GRANTED and the Clerk is directed to show

16

the Amended Answer and Counterclaim filed. Lincoln is to file its answer to Jackson's counterclaim on or before May 24, 2010.

SO ORDERED.

Enter for May 3, 2010.

S/Roger B. Cosbey  
Roger B. Cosbey  
United States Magistrate Judge